**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CARBONITE FILTER CORPORATION,** | : |
| | : |
| **Plaintiff** | :    **CIVIL ACTION NO. 3:18-1238** |
| | : |
| **v** | : |
| | :     **(JUDGE MANNION)** |
| **C. OVERAA & CO.,** | |
| | : |
| **Defendant** | |

## MEMORANDUM

Presently before the court is a motion to dismiss filed by the defendant C. Overaa & Co. ("Overaa") made pursuant to [Fed.R.Civ.Pro. 12(b)(2)](#) and 12(b)(6). (Doc. 12). The motion argues that the complaint, which plaintiff Carbonite Filter Corporation ("Carbonite") filed, should be dismissed for lack of general and specific personal jurisdiction over Overaa, a California company. The motion also argues that plaintiff's complaint fails to state any cognizable claims against Overaa. Because the court does not have general or specific personal jurisdiction over Overaa, the motion will be **GRANTED** under Rule 12(b)(2), and Carbon's complaint against Overaa will be **DISMISSED**.

## I.   BACKGROUND[1]

---

[1]The court must accept Carbonite's allegations in its complaint as true and resolve disputed facts in favor of Carbonite in considering Overaa's

Carbonite is a Pennsylvania company which is located in Schuylkill County, and it processes, packages and sells Pennsylvania anthracite coal for use as filter media in water treatment plants. Overaa is a California construction company which uses coal in water treatment plant construction projects. The City of Sacramento, California, owned a water treatment plant and it contracted Overaa to rehabilitate the plant by installing filters to wash and clean the water for the City, i.e., the Sacramento water treatment plant construction project (the "Project"). Carbonfilt, LLC, ("Carbonfilt"), is a Florida company that Overaa used to supply anthracite coal for the Project. Carbonite alleges that even though Carbonfilt was not an acceptable supplier for the anthracite coal according to the specifications for the Project, Overaa decided to use Carbonfilt to obtain 629 tons of anthracite coal for the Project.

On June 16, 2015, Carbonite was directed by Carbonfilt to provide a sample of its manufactured filter anthracite coal to Overaa to determine if it was acceptable for use in the Project. Carbonite then sent the sample to Overaa and Overaa advised that the sample was acceptable. On July 29, 2015, Carbonite sent another anthracite coal sample (Lot 2) for Overaa to test, and subsequently, Overaa advised Carbonfilt that the Lot 2 sample met the filter media requirements for the Project.

In August of 2015, Sacramento retained Kleinfelder, a media testing company, to test the bulk filter media sand and anthracite coal that Carbonite

---

motion to dismiss for lack of personal jurisdiction under to Fed.R.Civ.Pro. 12(b)(2). Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002).

had supplied. Carbonite alleges that Kleinfelder was not a credentialed testing laboratory and that it used improper testing protocols to test the sand and anthracite. Kleinfelder determined that the sand and anthracite filter media products contained deviations from the Project's specifications. Thereafter, the products were tested by six other testing laboratories which yielded inconsistent results.

Carbonfilt then advised Overaa that it was turning over the quality issues to the media manufactures, including Carbonite. Overaa then began communicating with Carbonite, either directly or via carbon copy, regarding its anthracite coal and the Project's requirements. It was finally decided that Carbonite's anthracite coal was in compliance with the Project's requirements and Overaa accepted and used all 629 tons of Carbonite's coal and, installed the coal in the water treatment plant filter system.

On June 19, 2018, Carbonite filed a complaint, (Doc. 1), which essentially alleged that it had performed work as a sub-contractor for the construction of the water treatment facility in Sacramento, i.e., the Project, for which Overaa was the general contractor. Carbonite alleges that Overaa owes it money for the anthracite coal it supplied and was used for the Project.

On August 24, 2018, Overaa filed its motion to dismiss for lack of jurisdiction and for failure to state a claim upon which relief can be granted. (Doc. 12). Overaa's motion has been fully briefed and exhibits were filed.

## II.    STANDARD[2]

Rule 12(b)(2) provides for the dismissal of a complaint if the plaintiff fails to establish that the court has personal jurisdiction over a party. Fed.R. Civ.P.12(b)(2). Rule 12(b)(3) in conjunction with 28 U.S.C. §1391, requires the court to dismiss the case if the plaintiff fails to show that the district in which the suit is brought is the proper venue. Fed.R.Civ.P. 12(b)(3).

Rule 12(b)(2) requires the court to accept the truth of factual allegations in the complaint relating to jurisdiction and the reasonable inferences that flow therefrom unless the moving party produces evidence tending to contradict the existence of jurisdiction. In re Chocolate Confectionary Antitrust Litigation, 674 F.Supp.2d 580, 595 (M.D.Pa. 2009). In other words, a party may rely entirely on allegations unless and until the moving party presents the court with actual evidence to the contrary. Id.; Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004) ("when the court does not hold an evidentiary hearing on the motion to dismiss, . . . the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor."); *but see*, e.g., Rodi v. S. New Eng. Sch. of Law, 255 F.Supp.2d 346, 348 (D.N.J. 2003) ("the plaintiff may not rely on the pleadings, but rather must introduce sworn affidavits or other competent evidence.").

If the moving party does submit competent evidence refuting jurisdiction,

---

[2]Although Overaa's motion to dismiss is also brought pursuant to the provisions of Fed.R.Civ.P. 12(b)(6), the court does not include the Rule 12(b)(6) standard since it will grant Overaa's motion to dismiss for lack of personal jurisdiction under to Fed.R.Civ.Pro. 12(b)(2).

the non-moving party shoulders the burden of establishing, by a preponderance of the evidence, that the court has jurisdiction over the matter. In re Chocolate Confectionary Antitrust Litigation, 674 F.Supp.2d at 595 ("Once these allegations are contradicted by an opposing affidavit, however, plaintiffs must present similar evidence in support of personal jurisdiction."). At this point, the plaintiff may not rely on bare pleadings but must support those pleadings with "actual proofs, not mere allegations." Id. (quoting Patterson by Patterson v. FBI, 893 F.2d 595, 603-04 (3d Cir. 1990)). As such, "although the burden of persuasion always lies with the non-moving party, the burden of production rests initially with the party moving for dismissal under Rule 12(b)(2)." Id. at 595, n. 21.

Additionally, "[a] motion under Federal Rule of Civil Procedure 12(b)(2) 'is inherently a matter which requires resolution of factual issues outside the pleadings, i.e., whether in personam jurisdiction actually lies.'" Farber v. Tennant Truck Lines, Inc., 84 F.Supp.3d 421, 426 (E.D.Pa. 2015) (citation omitted).

## III.    DISCUSSION

Since jurisdiction is a threshold issue, the court will first address Overaa's contention that Carbonite's complaint should be dismissed under Fed.R.Civ.Pro. 12(b)(2) because Overaa is not subject to the court's jurisdiction. Both Overaa and Carbonite have submitted evidence regarding the issue of whether the court has personal jurisdiction over Overaa. Thus,

Carbonite cannot simply rely on bare pleadings in its complaint to establish that the court has personal jurisdiction over Overaa.

"A federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." Farber, 84 F.Supp.3d at 426 (citation omitted). "The Pennsylvania [long-arm] statute [42 Pa.Cons.Stat. §5322(b)] permits the courts of that state to exercise personal jurisdiction over nonresident defendants to the constitutional limits of the Due Process Clause of the Fourteenth Amendment." Mellon Bank (East) PSFS, Nat. Ass'n v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992). "The Due Process Clause of the Fourteenth Amendment to the Constitution permits personal jurisdiction so long as the nonresident defendant has certain minimum contacts with the forum such that maintenance of the suit does not offend "'traditional notions of fair play and substantial justice.'" Farber, 84 F.Supp.3d at 426 (citations omitted).

"There are two types of personal jurisdiction: general jurisdiction and specific jurisdiction." Plumbers' Local Union No. 690 Health Plan v. Apotex Corp., 2017 WL 3129147, *4 (E.D.Pa. July 24, 2017) (citation omitted). "A Plaintiff may demonstrate that a court's exercise of personal jurisdiction is proper, by establishing that a court has either general jurisdiction or specific jurisdiction over the defendant, or by establishing that the defendant has consented to jurisdiction." Id. (citation omitted). There is no claim in this case that Overaa has consented to the jurisdiction of this court. Rather, Overaa contends that neither general nor specific personal jurisdiction exists over it.

### 1. General Jurisdiction

As in the case of Farber, 84 F.Supp.3d at 423, "[t]his case concerns the impact of two recent United States Supreme Court decisions, Goodyear Dunlop Tires Operations, S.A. v. Brown, 546 U.S. 915, 131 S.Ct. 2846 (2011), and Daimler AG v. Bauman, 571 U.S. 117, 134 S.Ct. 746 (2014), on a federal court's authority to exercise general jurisdiction over a nonresident corporate defendant, consistent with the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution."

As the court in Plumbers' Local Union, 2017 WL 3129147, *4, explained:

> "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." Daimler, 134 S. Ct. at 760. "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear, 564 U.S. at 919. The paradigm forums, in which a corporation is reasonably regarded as at home, are the place of incorporation and the principal place of business. Daimler, 134 S. Ct. at 760. "The exercise of general jurisdiction is not limited to these forums; in an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" BNSF Ry. Co. v. Tyrrell, 137 S. Ct. 1549, 1558 (2017) (quoting Daimler, 134 S. Ct. at 761, n.19). However, "the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business' ..., is unacceptably grasping." Daimler, 134 S. Ct. at 761 (citation omitted). "The Fourteenth Amendment due process constraint described in *Daimler* ... applies to all state-court assertions of general jurisdiction over nonresident defendants; the constraint does not vary with the type of claim asserted or business enterprise sued." Tyrrell, 137 S. Ct. at 1558–59.

Since Carbonite concedes that the court cannot exercise general jurisdiction over Overaa in Pennsylvania, (Doc. 19 at 11), in light of those Supreme Court decisions the court will now address whether it can exercise specific jurisdiction over Overaa, a California company which is incorporated and has its principal place of business in the California.

### 2. Specific Jurisdiction

Carbonite argues that this court has specific jurisdiction over Overaa. "Specific jurisdiction is dependent upon the relationship of the litigation to the defendant's contacts with the forum, i.e., the court's focus is on the minimum contacts between the non-resident defendant and the forum." Gorton v. Air & Liquid Systems Corporation, 303 F.Supp.3d 278, 291-92 (M.D.Pa. 2018) (citations omitted). "Specific jurisdiction is present only if the plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant 'should reasonably anticipate being haled into court' in that forum." Id. at 292 (citations omitted).

The central question is whether Overaa purposefully availed itself "of the privilege of conducting business within the forum state, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). The defendant must "purposefully direct[] [its] activities at residents of the forum and the litigation results from alleged injuries that arise out of or related to those activities." BP Chemicals Ltd. v. Formosa Chemical & Fibre Corp., 229 F.3d 254, 259 (3d Cir. 2000) (quotations and citations omitted).

Moreover, the Supreme Court clarified that the minimum contacts "analysis looks to the defendant's contact with the forum State itself, not the defendant's contact with persons who reside there." Walden v. Fiore, 134 S.Ct. 1115 (2014). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." Id. at 1121. "[A]lthough physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." Id. (citation omitted).

Thus, "specific personal jurisdiction over a defendant exists when: (1) the defendant 'purposefully directed [its] activities' at the forum; and (2) the litigation 'arise[s] out of or relate[s] to' at least one of the defendant's activities in Pennsylvania. Plumbers' Local Union, 2017 WL 3129147, *5 (citation omitted). "If the 'purposeful availment' and 'relatedness' requirements are met, a court may exercise personal jurisdiction as long as the assertion of jurisdiction 'comport[s] with 'fair play and substantial justice.'" Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985)).

The court now considers the first requirement stated above.

In determining whether Overaa "purposefully avails itself of the privilege of conducting activities within [Pennsylvania]", the court is mindful that "[p]hysical presence in the forum is not required, '[b]ut what is necessary is a deliberate targeting of the forum.'" Plumbers' Local Union, 2017 WL 3129147, *5 (citations omitted). *See also* Britax Child Safety, Inc. v. Nuna

International B.V., 321 F.Supp.3d 546, 554 (E.D.Pa. 2018)("a defendant must act so as to enjoy the 'privilege of conducting activities within the forum state.'") (citations omitted).

Overaa argues that this court cannot exercise specific personal jurisdiction over it based on the Affidavit of Christopher Manning, President of Overaa, (Doc. 12-2), in which he avers:

> Overaa is incorporated under the laws of the State of California, and its principal place of business is Richmond, California. Overaa is not incorporated, organized or existing under any Pennsylvania law, and it is not registered to do business in Pennsylvania. Only twice has Overaa worked outside of California, once in Oregon and once in Arizona. Overaa does not do business in Pennsylvania. Overaa has no employees in Pennsylvania. Overaa has no offices, facilities or places of business in Pennsylvania. Overaa does not maintain a mailing address or phone number in Pennsylvania. Overaa has no bank accounts in Pennsylvania. Overaa does not own or lease any real estate, or any other assets, in Pennsylvania. Overaa does not have a registered agent in Pennsylvania for service of process. Overaa does not regularly conduct business with any Pennsylvania resident or company.

> Manning further avers that:

> The amounts of Overaa's purchases of goods and services from Pennsylvania companies from 2010 to the present total less then one-half of one percent of the amount of Overaa's overall goods and services purchases. Overaa does not have any substantial, systematic and/or continuous contacts with Pennsylvania or any of its residents. Overaa has never had a construction project in Pennsylvania and has never provided any goods or services in Pennsylvania. Overaa does not advertise in Pennsylvania, and it does not solicit business in Pennsylvania. No Overaa employee has ever made any sales or marketing trips to Pennsylvania. Overaa has never directed its services to any Pennsylvania residents. Overaa has never availed itself of business opportunities in, or the protections of the laws of, Pennsylvania. Overaa has never consented to jurisdiction in Pennsylvania, and [its] standard Purchase Order [ ], provides that disputes shall be

10

resolved according to California law.

In his Affidavit, Manning explains the nature of its relationship with Carbonfilt regarding the Project and states that Overaa has no affiliation with Carbonfilt and that in April 2013, Overaa contracted with Carbonfilt, a Florida company, to arrange for the supply of coal and sand for the Project. Manning states that "Carbonfilt is not, and never has been, an agent or representative of Overaa, and Carbonfilt does not have, and has never had, any authority to enter into any contracts on behalf of Overaa, or to bind Overaa to any contractual or other obligations."

Additionally, Manning states that Overaa had no role in Carbonfilt's decision to then purchase the coal needed for the Project from Carbonite and, that Overaa was not a party to the June 2015 Purchase Order between Carbonite and Carbonfilt.[3] Further, Manning states that after Carbonfilt bought the coal from Carbonite, Carbonfilt in turn sold the coal to Overaa under a separate contract between Carbonfilt and Overaa. He states that Overaa had no contract with Carbonite regarding the Project, and that Overaa did not order the coal from Carbonite and did not agree to pay Carbonite for the coal. Additionally, Carbonite never billed Overaa for the coal it sold to Carbonfilt. Thus, no privity of contract existed between Overaa and Carbonite. Manning also points out that Overaa had no involvement with the payment terms of the contract between Carbonfilt and Carbonite, and it had no involvement

---

[3]A copy of the June 2015 Purchase Order between Carbonite and Carbonfilt is attached to the complaint.

Carbonfilt's decision not to pay Carbonite in full for the coal. Manning also avers that before the coal was delivered to the Project, Overaa had no contact at all with Carbonite.

In support of its contention that Overaa has actively availed itself of the laws and protections of Pennsylvania, Carbonite argues that "Overaa was required to used 'acceptable media suppliers' from Pennsylvania who manufactured Pennsylvania anthracite coal pursuant to the City of Sacramento spec sheet", and that "Overaa knew it could only procure anthracite coal from Pennsylvania because that is the only location where anthracite coal is found in the United States and the acceptable Pennsylvania anthracite coal suppliers were specifically identified by the City of Sacramento in the spec sheet."

Thus, Carbonite states that both Overaa and the City of Sacramento knew that they would have to obtain anthracite coal for the Project from Pennsylvania and that the City identified it as one of the four "acceptable media suppliers."

Carbonite also contends that even though Overaa's contract negotiations with Carbonfilt did not occur in Pennsylvania, and even though Overaa did not have any contract with a Pennsylvania company, Overaa has purposely availed itself of the privilege of conducting business in Pennsylvania since Carbonite's contract with Carbonfilt required it to ship the coal for the Project from Pennsylvania to California. Thus, Carbonite states that "Pennsylvania performance is essential because the anthracite coal

Overaa wanted is primarily found in Pennsylvania and was manufactured in and shipped from Pennsylvania", the state which contains all of the country's anthracite coal reserves.

Moreover, Carbonite states that jurisdictional discovery in this case has revealed that Overaa has done over $8 million worth of business with 59 different Pennsylvania companies over the last 8 years. (Doc. 19, Ex. 8). As stated, Manning avers that "[t]he amounts of Overaa's purchases of goods and services from Pennsylvania companies from 2010 to the present total less then one-half of one percent of the amount of Overaa's overall goods and services purchases." In this case, while Overaa contends that it does not do significant business in Pennsylvania and it does not target Pennsylvania for its services, the fact that Overaa has conducted $8 million of business with several Pennsylvania companies over the last 8 years sufficiently shows that Overaa has purposeful availed itself of conducting activities within Pennsylvania. *See* O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 317 (3d Cir. 2007) (a defendant's contacts with the forum must amount to "a deliberate targeting of the forum.").

Thus, the court finds that Overaa has purposefully availed itself of conducting activities in Pennsylvania.

Next, the court considers the relatedness factor. "[S]pecific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" Id. (quoting Goodyear, 564 U.S. at 919). "[A] connection between the forum and the specific claims at issue" is

13

required. Id. (quoting Bristol-Myers Squibb Co. v. Superior Court of California, 137 S. Ct. 1773, 1781 (2017)). "[A] plaintiff's claims must 'arise out of or relate to' a defendant's forum contacts", and in order for claims to "'arise out of or relate to' a defendant's contacts, 'the causal connection can be somewhat looser than the tort concept of proximate causation, but it must nonetheless be intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably foreseeable.'" Id. (citing O'Connor, 496 F.3d at 323). "The inquiry is 'necessarily fact-sensitive.'" Id.

"Simply put, the defendant's contacts with the forum state must be material to the claim. The court may not exercise personal jurisdiction if the defendant's contacts with the forum are 'too attenuated.'" Gorton, 303 F.Supp.3d at 292. (citations omitted).

Overaa argues that there is no specific jurisdiction over it in Pennsylvania since Carbonite failed to establish that its claims arise out of or relate to Overaa's activities within Pennsylvania. Further, while Carbonite attempts to address Overaa's forum related activities which give rise to its causes of action, Overaa's dealings with other Pennsylvania companies and its conduct in Pennsylvania over 8 years unrelated to Carbonite's instant claims and the Project are not sufficient to subject Overaa to this court's jurisdiction in Pennsylvania with respect to the relatedness requirement. *See* Gorton F.Supp.3d at 292 (plaintiff must show that its alleged injuries in its case were caused by the defendant's "activities that were directed at the state of Pennsylvania.").

14

Here, the court finds that Carbonite's claims do not "arise out of or relate to" Overaa's forum contacts. Further, simply because "Overaa needed Pennsylvania mined and manufactured anthracite coal to install in a series of water filters at the City of Sacramento water treatment plant", as Carbonite alleges, does not change the fact that Overaa did not contact any company in Pennsylvania to get the coal and sand it needed for the Project and, it did not perform any activities for the Project in Pennsylvania. In addition, as Overaa points out, the specifications for the Project also identified two companies that were not from Pennsylvania who were authorized to supply the coal for the Project. Thus, as Overaa states, "[j]urisdiction cannot be based solely on the geographical source of materials used in a construction project."

Regardless of Carbonite's claim that Overaa attempted to circumvent the City of Sacramento's spec sheet for the Project regarding the required coal and that Carbonfilt was not qualified to bid on the job, the fact remains that Overaa did not seek to obtain the coal from any Pennsylvania company and did not enter into any contract for the purchase of the coal from any Pennsylvania company. Rather, Overaa chose to deal with Carbonfilt, a Florida company, to arrange for the supply of both the sand and the coal it needed for the Project, and Overaa had no involvement with Carbonfilt's decision to then contract with Carbonite to get the coal. As Overaa states in its reply brief, (Doc. 22 at 3-4), "the mere fact that Pennsylvania coal was required for the Project cannot alone subject Overaa to jurisdiction in the

15

Pennsylvania Courts. If this were the case, the logical extension of this argument would create absurd results[], such as, "each and every person and entity, including the City of Sacramento, who was involved in the Project and benefitted from [Carbonite's] supply of coal, could be subject to jurisdiction in Pennsylvania simply because the coal came from Pennsylvania."[4]

Nor does the court find that Carbonite's claims that it was not fully paid for the coal it provided for the Project arise out of or relate to any contacts Overaa had with Pennsylvania. "[A] defendant's knowledge of a plaintiff's existence in the forum State or knowledge that its conduct may cause a plaintiff to experience harm in the forum State are insufficient justifications for establishing specific jurisdiction." Miller v. Native Link Construction, LLC, 2017 WL 3536175, *23 (W.D.Pa. Aug. 17, 2017) (citation omitted). The court in Miller, id., also cited to Walden v. Fiore, 134 S. Ct. 1115, 1124 (2014), noting that the Supreme Court "reject[ed] the appellate court's conclusion that the necessary minimum contacts could be established by a defendant's knowledge of the plaintiff's strong connections to a forum and a conclusion that the plaintiff had suffered foreseeable harm there."

Overaa had no direct contacts with Pennsylvania with respect to its

---

[4]Carbonite largely relies on a Ninth Circuit Court case, namely, Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834 (9th Cir. 1986), to support its contentions that this court has specific jurisdiction over Overaa. As Overaa explains in its reply brief, (Doc. 22 at 4-5), Carbonite's reliance on Decker is misplaced since there is no contract between Carbonite and Overaa, and since Carbonite shipped the coal to California in only 3 shipments over approximately 1 month.

16

general contractor work for the Project and it did not solicit and contract with any company in Pennsylvania to supply the coal. Although Carbonite manufactured the anthracite in Pennsylvania and delivered the coal to Overaa in California, there was no contract between Overaa and Carbonite for Overaa to buy the coal. Rather, Carbonite sold the coal to Carbonfilt, not Overaa. Certainly any claims that Carbonite may have against Carbonfilt for breach of contract and nonpayment for its coal would seem to arise from Carbonfilt's contacts with Pennsylvania, but there is no causal connection between Carbonite's claims and any Pennsylvania contacts by Overaa.

As such, it cannot be said that Overaa availed itself of the benefits and protections of Pennsylvania law when it contracted with Carbonfilt to arrange for the supply of coal it needed for the Project in California. Thus, Carbonite's instant claims do not arise out of or relate to any of Overaa's activities in Pennsylvania. Thus, it was not reasonably foreseeable that Overaa would have to litigate the instant claims regarding the nonpayment for Carbonite's coal in Pennsylvania.

Accordingly, specific personal jurisdiction over Overaa does not exist in Pennsylvania because both of the aforementioned requirements are not satisfied. Since the court finds that the "relatedness" requirement is not met, the court does not have to consider whether the exercise of personal jurisdiction over Overaa comports with "fair play and substantial justice." Plumbers' Local Union, 2017 WL 3129147, at *5 (quoting Burger King, 471 U.S. at 476); *see also* Gorton, 303 F.Supp.3d at 292 (citing O'Connor, 496

F.3d at 317).

## IV.    CONCLUSION

For the reasons discussed above, Overaa's motion to dismiss, (Doc. 12), Carbonite's complaint, (Doc. 1), for lack of personal jurisdiction is **GRANTED**. An appropriate order shall follow.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**


**Date: November 7, 2018**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2018 MEMORANDA\18-1238-01.wpd

18